STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**03-1045**

**GILFRED LEOPAUL**

**VERSUS**

**ACADIANA GRANITE & MARBLE**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 4
PARISH OF LAFAYETTE, NUMBER 01-08983
SHARON MORROW, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLIE COLOMBARO WOODARD**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Billie Colombaro Woodard, Elizabeth A. Pickett, and Arthur J. Planchard,[*] Judges.

**AFFIRMED.**

Thomas V. Alonzo
730 Jefferson Street
Lafayette, Louisiana 70501
(337) 291-2773
Counsel for Plaintiff/Appellee:
    Gilfred Leopaul

H. Douglas Hunter
Guglielmo, Lopez, Tuttle, Hunter & Jarrell
Post Office Drawer 1329
Opelousas, Louisiana 70571-1329
(337) 948-8201
Counsel for Defendant/Appellant:
    Acadiana Granite & Marble

---

[*]Judge Arthur J. Planchard, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge *Pro Tempore*.

WOODARD, Judge.

Acadiana appeals the WCJ's determination that Mr. Leopaul did not forfeit his claim to workers' compensation benefits under La.R.S. 23:1208. We affirm the WCJ's ruling.

* * * * *

The claimant, Mr. Gilfred Leopaul, was driving a company truck in the course and scope of his employment with Acadiana Granite & Marble (Acadiana) when he was involved in a head-on collision. Initially, he complained of injuries to his entire left side, and his middle and lower back. By the time of trial, his primary complaint concerned, only, his left knee.

The accident occurred on September 19, 2001. Acadiana paid Mr. Leopaul workers' compensation benefits for injuries he received in the accident from this date until December 12, 2001. It terminated his benefits, after it discovered that he had lied about his medical history in an October 4th telephone conversation with Magdalene Blanchard. Ms. Blanchard is the insurance adjuster for LUBA, Acadiana's workers' compensation insurer. Specifically, Mr. Leopaul allegedly told her that he had never had any other on-the-job injuries, and he denied having been in any prior car accidents or having ever sought treatment for his neck or back.

Upon discovering that he had, in fact, sought workers' compensation benefits for another on-the-job injury and that he had been involved in a prior car accident, Acadiana terminated his benefits based on La.R.S. 23:1208.

Mr. Leopaul sued Acadiana seeking reinstatement of his benefits. The Workers' Compensation Judge (WCJ) excluded evidence of Mr. Leopaul's and Ms. Blanchard's conversation because his attorney was not a party to it. The WCJ determined that Mr. Leopaul did not make any willful misrepresentations that satisfied La.R.S. 1208's elements and reinstated benefits. Further she ordered Mr. Leopaul to reimburse Acadiana money he received from the insurer of the third party who was involved in his car accident.

Acadiana appeals, only, the WCJ's failure to find that Mr. Leopaul forfeited benefits under La.R.S. 1208.

1

Thus, we must decide whether the WCJ was clearly wrong in determining that Mr. Leopaul did not willfully make any false misrepresentations in order to obtain benefits.

* * * * *

**STANDARD OF REVIEW**

Louisiana Revised Statute 23:1208 states, in pertinent part:

> A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

> . . . .

> E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

The WCJ found that any "misrepresentations" in Mr. Leopaul's testimony were not willful. This finding requires a determination of his credibility; therefore, it is subject to the manifest error standard of review.[1] Furthermore, we recognize that forfeiture of benefits under Section 1208 is a harsh remedy and requires a strict construction.[2]

**MISREPRESENTATIONS**

Acadiana attempted to impeach Mr. Leopaul with statements he gave in his deposition that he had never received any workers' compensation benefits before this claim, when the evidence showed that he had received medical benefits before and he had received indemnity benefits, as well, for approximately a month in 1996. Acadiana also points out that Mr. Leopaul failed to disclose his prior injuries to

---

[1] *Lavergne v. Lake Charles Mem'l Hosp.*, 625 So.2d 1098 (La.App. 3 Cir. 1993), *writ denied*, 631 So.2d 451 (La. 1/7/94).

[2] *Smith v. Quarles Drilling Co.*, 99-171 (La.App. 3 Cir. 6/2/99), 741 So.2d 829, *writ denied*, 99-1949 (La. 10/8/99), 751 So.2d 227.

certain physicians. Specifically, he denied having prior back injuries on forms inquiring about his medical history for Drs. George and Sweeney, and he failed to disclose that he had prior back pain or knee injuries when Dr. Heard asked him about his past medical history. Mr. Leopaul, also, represented that he did not miss any work when he injured his left knee in 1993. However, the evidence reveals that his physician excused him from work for a week for this injury.

Additionally, Acadiana refers to certain statements Mr. Leopaul made to Ms. Blanchard. However, the WCJ excluded evidence of this conversation because Ms. Blanchard took the statement without notifying Ms. Leopaul's attorney. Before making this decision, the WCJ held a hearing and heard testimony. Ms. Blanchard asserted that Mr. Leopaul's attorney's office told her that it was representing him for the third party claim, but not for the workers' compensation claim, unless it became necessary.

The WCJ referred to La.Code Evid. art. 607 and determined that the probative value of the statement was substantially outweighed by unfair prejudice. Acadiana proffered the recorded statement reflecting the conversation. However, it does not present an argument or assign error to the WCJ's evidentiary ruling.

**WILLFULNESS**

The WCJ found several legitimate justifications for any inconsistencies in Mr. Leopaul's testimony. In evaluating the evidence to determine willfulness, it considered Mr. Leopaul's "limited understanding." It is undisputed that he cannot read or write and that he is a "slow learner." He was in special education classes throughout grade school, completing only seven grades. Thus, the trial court found it plausible that he, simply, did not fully comprehend the questions he was asked.

Further, it viewed the evidence in light of Ms. Nedia Credeur's testimony that he was a good worker and had a good work ethic. Before he started working for Acadiana, Mr. Leopaul worked for Ms. Credeur for twelve years, and, while he had a few minor "work incidents," the trial court found that he "has never demonstrated a tendency to prolong those injuries or take advantage to any extent."

We find a reasonable basis in the record for the WCJ's decision. Mr. Leopaul's testimony reveals that he does not have any understanding of the workers' compensation system. For example, he admitted that his previous employer had paid

3

the medical expenses associated with his prior work injuries, yet maintained that he had not received workers' compensation benefits.

Additionally, since he could not write, he relied on his girlfriend to complete forms for him, such as the patient medical history forms. Based on Dr. Heard's deposition, we cannot say that Mr. Leopaul's failure to disclose a prior back or knee injury was willful. Specifically, when asked about his medical notes which indicated that Mr. Leopaul had no past medical problems, Dr. Heard said:

> Q: Were you ever made aware that this gentleman had, in fact, had prior complaints in the neck, the low back and the left knee?
>
> Dr. Heard: He may have in the distant past. I was only interested in the recent past prior to the injury.

Furthermore, since Mr. Leopaul's previous knee injury was a relatively minor one, occurring approximately eight years before, it is plausible that he simply did not recall that he had been off of work for a week because of it. Moreover, in his deposition, Dr. Duhon states that he told Mr. Leopaul to stay off of his leg and not to return to work for the next week. At the end of that time, Mr. Leopaul was supposed to return to see Dr. Duhon, but he did not. Dr. Duhon does not say that he knows whether Mr. Leopaul followed his directions. He may have, in fact, returned to work the following day, as he testified.

Moreover, Mr. Leopaul testified that he did not intend to hide anything from the attorney who took his deposition, or to hide any previous injuries from his physicians.

Apparently, the WCJ found that he was a credible witness and believed him. Her finding is entitled to great weight, as the factfinder at trial is in a better position to evaluate truthfulness and credibility.[3] We find no manifest error in the WCJ's determination.

---

[3]*Darby v. Gilbert Richard, Inc.*, 02-1154 (La.App. 3 Cir. 2/5/03), 838 So.2d 141 (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989)).

**CONCLUSION**

Finding no manifest error in the WCJ's determination, we affirm its ruling that Mr. Leopaul did not forfeit his right to workers' compensation benefits. We assign the costs of this appeal to Defendants/Appellants.

**AFFIRMED.**