722 So.2d 332 (1998)
Otis SMALLEY, Plaintiff-Appellee,
v.
INTEGRITY, INC., and Louisiana Home Builders Association-Self Insurers Fund, Defendants-Appellants.
No. 31,247-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 9, 1998.
*333 Pettiette, Armand, Dunkelman, Woodley & Byrd by Robert A. Dunkelman, Shreveport, Counsel for Defendants-Appellants.
Kelly, Townsend & Thomas by Donald G. Kelly, Natchitoches, Counsel for Plaintiff-Appellee.
Before MARVIN, C.J., and NORRIS and STEWART, JJ.
NORRIS, Judge.
In this worker compensation case, the employer and its insurer appeal a judgment awarding the claimant weekly compensation benefits. The appellants urge the WCJ erred in failing to find that the claimant forfeited all benefits because of fraud; alternatively, they urge the WCJ failed to grant proper credit for disability insurance benefits *334 partially funded by the employer. For the reasons expressed, we affirm.

Factual and procedural background
The claimant, Otis Smalley, was a journeyman carpenter employed by Integrity Inc., an industrial contractor. On August 24, 1995 he injured his back while unloading metal desks on the job. He initially went to a hospital in Alexandria, near the site of the accident, but the following week his supervisor sent him to Dr. Carl Goodman, an orthopedist in Shreveport. Dr. Goodman performed an L5 lumbar discectomy at the Highland Clinic and, after some therapy, sent Smalley back to medium-duty work in December 1995. Smalley complained, however, that he was working in constant back and leg pain. He testified that he quit work in March 1996; at this point, Integrity's compensation carrier resumed paying him temporary, total benefits of $296.48 a week.
Although Smalley complained that increased activity aggravated his back and leg, Dr. Goodman continued to recommend that he return to work in some capacity. Smalley then selected his own orthopedist, Dr. Austin Gleason. This doctor examined him and concluded that not only should Smalley not be working, but he needed a second surgery, an L5 laminectomy with possible L4-5 fusion. Smalley saw Dr. Goodman two more times, but by August 1996 he notified the Office of Workers Compensation ("OWC") that Dr. Gleason would be his primary physician.
Because of the conflicting reports from Drs. Goodman and Gleason, the OWC ordered an independent medical examination from Dr. James Zum Brunnen, but this was not performed until November 1996. Dr. Zum Brunnen ultimately agreed with Dr. Gleason that Smalley should not be working and should have the second surgery. This was ultimately authorized and performed on March 6, 1997.
Meanwhile, Smalley faced financial problems involving a divorce and custody dispute (his comp check was already being reduced for a child support assignment), his father's medical bills and various other debts. Uncertain that the OWC would ever approve the surgery, Smalley went to work for a friend of his, John Sipes, starting in October 1996. His work for Sipes was part-time residential carpentry.[1] Smalley, however, did not report this income to the OWC, Integrity or its comp carrier, or to Drs. Zum Brunnen or Gleason, whom he saw while working for Sipes. He merely continued to receive, indorse and deposit his comp checks.
In the first week of January 1997, Smalley's comp check was late. He phoned Integrity to ask why, and learned his benefits had been terminated because the company had documentation that he was working for wages. Smalley quit working for Sipes on January 8. He then underwent the second surgery in March 1997; Integrity covered it.
Smalley filed this disputed claim in May 1997. Integrity and its comp carrier, the Louisiana Home Builders Association Self-Insurance Fund, defended on grounds that Smalley willfully made a false statement or representation for the purpose of obtaining benefits. La. R.S. 23:1208. Alternatively they sought credit for the wages Smalley earned, R.S. 23:1206, as well as a reduction of comp benefits for disability benefits under R.S. 23:1225 C.
Trial was held in December 1997. In support of its § 1208 defense, Integrity and its carrier cited a December 18, 1996 note from Dr. Gleason's office which stated, "Working/No," the indorsement of comp checks while he was working, and the failure to tell Dr. Zum Brunnen, Integrity or the OWC that he was working. Smalley denied giving anyone false information, insisting that no one asked about his work status during the period in question. In support of its § 1225 reduction claim, Integrity showed that it provided its employees a long-term disability policy through UNUM Life Insurance Company and paid 70% of the premiums. Because of his injury, Smalley qualified for benefits totaling $15,466.88 under this policy; Integrity sought credit for 70% of this amount. However, UNUM's policy *335 provided for the reduction of disability benefits if the employee was also drawing workers comp; for this reason, Smalley actually received only $1,649.95. Smalley requested that Integrity's credit be based on the reduced amount.
The WCJ ruled from the bench that Smalley did not falsely represent to anyone that he was not working when he really was. She further ruled that his failure to report income did not warrant forfeiture of benefits under § 1208 E. She noted that § 1208 had been amended in 1995, prior to Smalley's injury, to require that each claimant receive a form summarizing the fines and penalties for comp fraud, with notice of the duty to report wages to his insurer. She took judicial notice, however, that the OWC did not publish the necessary form and notice until after Smalley's injury, and found that Smalley had never in fact received this information. She therefore declined to hold that the failure to report other income required a forfeiture of benefits. She awarded supplemental earnings benefits from October 7, 1996 (the date Smalley went to work for Sipes) through March 6, 1997 (the date of the second surgery); then temporary, total benefits from March 7 through September 5, 1997; then SEB thereafter. She awarded a credit for temporary total benefit overpayments made while Smalley was working.
Addressing the reduction for disability benefits, the WCJ stated that R.S. 23:1225 C(3) was ambiguous and confusing, and that the "basic benefit" amount of $15,466.88 was a "fictitious figure" which Smalley never received. She stated that the spirit of the statute was to avoid duplicate recovery, and that reduction based on the actual amount received, $1,649.86, better served that objective. She therefore ordered a reduction of $1,154.90, or 70% of the benefits received.

Discussion: Forfeiture of benefits
By its first assignment Integrity urges the WCJ erred in failing to order the forfeiture of benefits. In support it reiterates that the office note of December 18, 1996 from Dr. Gleason's office, "Working/No," was a false statement; that Smalley's indorsement of comp checks while he was earning other wages was a recurrent false statement; and that the failure to advise Dr. Zum Brunnen or Integrity's comp carrier of his work status was a misrepresentation.
Forfeiture of comp benefits for misrepresentation is governed by La. R.S. 23:1208, which provides in part:
§ 1208. Misrepresentations concerning benefit payments; penalty
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation. * * *
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this chapter.
F. Whenever the employer reports an injury to the office pursuant to R.S. 23:1306, the employer and employee shall certify their compliance with this Chapter to the employer's insurer on a form prescribed by the director, which form shall include all of the following information:
(1) A summary of the fines and penalties for workers' compensation fraud.* * *
(3) The fine or penalty that may be imposed for failure to report to the insurer as required by this Section.
G. Whenever an employee receives benefits pursuant to this Chapter for more than thirty days, the employee shall report his other earnings to his employer's insurer quarterly on a form provided by the director.
H. (1) Whenever an employee fails to report to his employer's insurer as required by this Section within fourteen days of his receipt of the appropriate form, the employee's right to benefits as provided in this Chapter may be suspended. If otherwise eligible for benefits, the employee shall be entitled to all of the suspended benefits after the form has been provided to the insurer. * * *
(Subsections F, G and H were added by La. Acts 1995, No. 368, effective June 16, 1995.)
*336 Prior to the 1995 amendment, the Supreme Court held that§ 1208 authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Const. Co., 94-2708 (La.9/5/95), 660 So.2d 7; Harris v. Bancroft Bag Inc., 30,431 (La.App. 2 Cir. 4/9/98), 714 So.2d 44. The WCJ's factual findings are entitled to great discretion and will be reversed only on a showing of manifest error. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; J.E. Merit Constructors Inc. v. Butler, 97-361 (La.App. 5 Cir. 9/30/97), 700 So.2d 1111. Because § 1208 is penal in nature, it must be strictly construed, both in its substantive ambit and in its penalty provisions. Chevalier v. L.H. Bossier Inc., 95-2075 (La.7/2/96), 676 So.2d 1072.
Integrity argues that the WCJ was plainly wrong in failing to find that Smalley willfully made a false representation about his work status for the purpose of obtaining temporary, total benefits. The "most damning" evidence is the December 18 office note. According to Integrity, Dr. Gleason said this could not have come from any other source than the claimant himself (Gleason's Dep., 36); and Ms. Randolph, the X-ray technician who made the note, said the standard protocol was to ask the patient whether he was working and jot his response (Randolph's Dep., 11-13). Notably, Dr. Gleason also admitted that on occasion his nurses had carried over a notation from an earlier chart (Dep., 35), and Ms. Randolph had no independent recollection of asking Smalley this question on December 18 (Dep., 17). Smalley admitted that he never volunteered the fact that he had been working; he could not recall whether any of Dr. Gleason's nurses asked him about it, but testified that if they had, he would have admitted he was working. R.pp. 67-68, 108. On this evidence, the WCJ chose to accept Smalley's contention that he did not misstate his work status to Dr. Gleason's nurse. As the record presents conflicting and equivocal evidence, and the factual finding necessarily hinges on an assessment credibility, we are unable to declare the WCJ's finding manifestly erroneous. Alexander v. Pellerin Marble, supra.
Integrity also urges that Smalley committed willful misrepresentation by receiving, indorsing and depositing his temporary, total checks while he was earning wages from Sipes. The ambit of "willful misrepresentation" and the penalty of forfeiture, however, must be strictly construed. Chevalier v. L.H. Bossier Inc., supra. The WCJ did not consider the passive acceptance of benefits to equal an intentional, willful misrepresentation as defined by § 1208 A, and Integrity has shown us no jurisprudence to that effect.
We adhere to the view that penal statutes must be strictly construed. We also note the impact of the Act 368 of 1995. This added to § 1208 subsections F, G and H, which created a requirement to notify the claimant of the fines and penalties for fraud, and a duty for the claimant to report "other earnings" to his employer's comp carrier, on penalty of suspension of benefits. The apparent purpose of the amendment was create an intermediate remedy for conductfailure to report wagesthat the legislature considered wrong but not serious enough to justify forfeiture of all benefits. We therefore find that Smalley's conduct, accepting comp checks without reporting his part-time work, does not fall within the ambit of the forfeiture provision of § 1208 E, but is more appropriately addressed by the suspension provision of § H.
As noted, both sides have briefed Act 368, which took effect over two months before Smalley's injury. Integrity concedes that the applicable law is that in effect at the time of the alleged misrepresentation. Resweber v. Haroil Constr. Co., supra. The WCJ took judicial notice, however, that the "form prescribed by the director," required by § 1208 F, was not prepared and promulgated until April 1996 as LDOL-WC-1025.[2] This form would have advised the claimant of the consequences of fraud and the duty to *337 report "other earnings." The WCJ found that Smalley never received this form, and Integrity does not contest this finding. The statute clearly conditions imposition of the penalty upon the claimant's "receipt of the appropriate form." R.S. 23:1208 H(1). Without proof that Smalley ever received the form, the WCJ was entitled to find that imposition of the penalty was inappropriate.
By supplemental brief Integrity cites the Supreme Court's holding in Resweber that because § 1208 contains no notice requirement, it may be applied without notice to the claimant. Notably, however, the Supreme Court did not address the recent 1995 amendment and its specific reference to "receipt of the appropriate form" in § 1208 H(1). The amendment obviously added a notice requirement, thus distinguishing this case from Resweber.
Finally, we recognize Integrity's concern that the OWC's inertia from June 1995 until April 1996 may have created a 10-month "window of opportunity" in which the penalty provision of § 1208 H cannot be utilized. We agree that the legislature likely did not intend to give the Director the power to overrule or suspend the effect of Act 368. However, we also feel the legislature did not intend to permit the WCJ or appellate court to impose the penalty without the claimant's "receipt of the appropriate form." This argument lacks merit. The WCJ's decision denying § 1208 penalties is affirmed.

Reduction of benefits
By its second assignment Integrity urges the WCJ erred in failing to order a reduction of benefits in accord with La. R.S. 23:1225 C(3) and (4). Integrity showed that it paid 70% of the premiums for an employees' disability benefit policy with UNUM, and that Smalley received benefits from that policy. Integrity argues that Smalley's "basic benefit," or $15,466.88, equates with the "full amount of employer funded disability benefits" and creates the right to a reduction.
The coordination of wage-loss benefits is governed by La. R.S. 23:1225, which provides that if an employee receives remuneration from, inter alia, benefits under disability benefit plans in the proportion funded by the employer, then his comp benefits shall be reduced so that his aggregate remuneration shall not exceed 66 2/3% of his average weekly wage. R.S. 23:1225 C(1)(c). It further provides:
(3) If an employee is receiving both workers' compensation benefits and disability benefits subject to a plan providing for reduction of disability benefits, the reduction of workers' compensation benefits required by Paragraph (1) of this Subsection shall be made by taking into account the full amount of employer funded disability benefits, pursuant to plan provisions, before any reduction of disability benefits are [sic] made.
(4) If a conflict arises between the application of the provisions of this Section and those of any other Louisiana law or contract of insurance, the provisions of this Section shall control.
(Subsections C(3) and (4) were added by La. Acts 1995, No. 1284, § 2.)
Coordination of benefits serves the dual purposes of assuring that a certain minimum portion of the employee's actual wages continues in the event of a work related injury, and of precluding the receipt of duplicative wage-loss benefits from different parts of the overall system. Garrett v. Seventh Ward General Hosp., 95-0017 (La.9/22/95), 660 So.2d 841. As § 1225 serves the remedial goal of protecting workers from the economic burdens of work-related injuries, it should be liberally construed in furtherance of that goal. See, Sevin v. Schwegmann Giant Supermarkets, 94-1859 (La.4/10/95), 652 So.2d 1323, and citations therein. In particular, claims for reduction of comp benefits under R.S. 23:1225 are strictly construed to foster the receipt of benefits. See, e.g., Traweek v. City of West Monroe, 30,571 (La. App. 2 Cir. 5/13/98), 713 So.2d 655.
We note at the outset that the only disability benefits at issue in this case are those stated in UNUM's explanation of benefits dated January 29, 1997. Ex. D-9. It is obvious that reducing Integrity's comp obligation by 70% of $15,466.88 instead of 70% of $1,649.95 would impose significant hardship upon Smalley and subvert the remedial purpose of the statute. We have therefore examined *338 § 1225 under the proper standard of construction, together with the instant record, and find that the WCJ was not in error in applying the statute to the case. Subsection C(3) addresses precisely the situation presented: Smalley was receiving both comp benefits and disability benefits partially funded by Integrity, and the latter were contractually reduced for the receipt of comp benefits. The subsection further states, however, that the comp reduction is to be made "before any reduction of disability benefits [is] made."
The record is clear that UNUM reduced Smalley's disability benefits as they came due, through January 1997. Ex. D-9. Integrity did not seek to reduce Smalley's comp benefits until it answered the contested claim in June 1997. R.p. 17. In short, Integrity failed to do so before the reduction of disability benefits was effected. Considering the burden that would fall to the employee if Integrity were allowed to assert its comp reduction retroactively after benefits were received, and Integrity's superior position to coordinate comp and disability benefits, the WCJ did not err in strictly construing § 1225's reduction provisions and enforcing Smalley's right to a modicum of income protection. On the record presented, the WCJ was entitled to grant Integrity a reduction only for the actual disability benefits received instead of the full amount of employer funded benefits. This portion of the judgment will be affirmed.[3]
As a final matter, Smalley urges in brief that he has filed an ERISA claim against "UNUM and/or Integrity," and suggests that this court should not render a judgment that will be preempted by federal law, 29 U.S.C. § 1144. We decline to address matters not of record, but note that the necessity for filing a federal claim because of provisions of the Louisiana comp statute underscores the value of a liberal construction of § 1225. If Integrity had enforced its reduction claim before UNUM reduced Smalley's disability benefits, all claims could be "equitably and expeditiously" resolved in the OWC. See, Workers' Compensation Hearing Rules, § 2101 (La. Adm.Code 40:XXI, § 2101); Lambert v. National Maint. Corp., 95 0826 (La.App. 1 Cir. 12/15/95), 665 So.2d 822.

Conclusion
For the reasons expressed, the judgment is affirmed. Appellate costs are assessed to the appellants.
AFFIRMED.
NOTES
[1] Smalley testified that Integrity paid him $11.40 an hour, while Mr. Sipes paid him $13.00 an hour in cash.
[2] Integrity concedes in brief that the Director of the OWC did not promulgate this form until March 20, 1996, and made it applicable to accidents "occurring on or after April 1, 1996." La. Register XXII:3, p.222-223 (March 20, 1996).
[3] We express no opinion regarding any reduction claim under 23:1225 that may have arisen after June 13, 1997, the date of Integrity's answer.