902 So.2d 1220 (2005)
Walter FREEMAN, Plaintiff-Appellee
v.
TRIAD BUILDERS and CNA Insurance Companies, Defendants-Appellants.
No. 39,657-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 11, 2005.
*1222 Mayer, Smith & Roberts, L.L.P., by Kim Purdy Thomas, Shreveport, for Appellants.
Law Office of William T. Allison, LLC, by William T. Allison, Shreveport, for Appellee.
Before WILLIAMS, STEWART & PEATROSS, JJ.
PEATROSS, J.
This workers' compensation action arises out of claimant's, Walter Freeman, 1995 accident and injury during the course and scope of his employment as a carpenter with Triad Builders ("Triad"). Triad and its workers' compensation carrier, CNA Insurance Companies ("CNA"), appeal the workers' compensation judge's ("WCJ") ruling that Mr. Freeman did not willfully make false representations for the purpose of obtaining benefits under La. R.S. 23:1208. For the reasons stated herein, we affirm in part and reverse in part.

FACTS AND ACTION OF THE WCJ
Mr. Freeman injured his back on the job in 1995 and Triad and CNA began paying benefits and providing medical treatment. Mr. Freeman underwent three surgical procedures and received extensive pain management therapy for severe back and leg pain. Mr. Freeman asserts that the third surgery relieved the leg pain, but the back pain persisted unabated. During 1996 and 1997, Mr. Freeman's pain management included numerous steroid injections and very high doses and quantities of opiate pain medication. Also during this time, CNA denied some of Mr. Freeman's claims for pain management therapy, including narcotics; and, when he requested a trial of acupuncture, CNA denied the claim. Mr. Freeman filed several disputed claim forms due to CNA's various denials for pain management treatment  in December 2000, after filing a disputed claim form seeking a trial of acupuncture, a hearing was held wherein the WCJ ordered production of reports from the pain management physicians who had treated Mr. Freeman. Following review of those reports, CNA agreed to pay for the acupuncture *1223 trial. Mr. Freeman asserts that the acupuncture treatments reduced his pain considerably.
In the interim, CNA began surveillance of Mr. Freeman to investigate his activity and capabilities. Two videotapes were obtained showing Mr. Freeman and his wife traveling from their home in Choudrant to Shreveport to the acupuncturist's office. The videotapes show the Freemans exiting the office after the treatments and getting into their vehicle with Mrs. Freeman driving. A few minutes later, the two pull over and switch places with Mr. Freeman taking over the driving. Triad and CNA argue that Mr. Freeman can be seen on the tapes bending over and generally acting as if he is pain-free. The second videotape shows a similar scenario, wherein the couple leaves the office with Mrs. Freeman driving initially, but stopping a few blocks from the office and switching places. The tapes also show the couple going to Wal-Mart and Auto Zone.
Approximately two months after the tapes were made, Mr. Freeman was deposed. In his deposition, he testified that he could not drive far from his home and that he only drove 100 yards or so to his father's home from his home. He stated that he could not drive due to the large amounts of pain medication he was having to take and he could not recall having driven home from Shreveport after his appointments a couple of months earlier. According to Triad and CNA, Mr. Freeman also told one of his physicians, Dr. Osborne, that he was unable to drive farther than the 100-yard distance to his father's house.
After Mr. Freeman's deposition, Triad terminated benefits and refused further medical treatment. Mr. Freeman filed another disputed claim form and Triad pled the affirmative defense of fraud under La. R.S. 23:1208. The parties stipulated that the only issue to be tried was the alleged 23:1208 violation.[1]
After trial, the WCJ found that, while Mr. Freeman did make a misstatement, it was neither material nor willful, and that the insurer's use of 23:1208 was technical and overzealous. He concluded that Mr. Freeman had been "terribly" affected by the persistent use of narcotic pain medications. He further concluded that "neither Resweber [infra] nor Louisiana Statutes 23:1208 was intended to bar legitimate claimants who inadvertently give contradictory statements after years of pain, depression, and the effects of prescribed medication, from receiving the compensation benefits to which they are entitled." The judgment provided for restoration of indemnity payments and reinstatement of medical benefits. In addition, the judge awarded Mr. Freeman attorney fees in the amount of $5,000. Mr. Freeman filed a motion for new trial on the issue of attorney fees and the record was supplemented with medical records. Ultimately, judgment was entered maintaining the dismissal of the 23:1208 fraud defense and the restoration of benefits retroactive to September 9, 2001, and related medicals, and further increasing the award of attorney fees to Mr. Freeman to $15,000.
Regarding the increase in attorney fees, we note that Triad pointed out to the WCJ that the judgment on the 1208 issue should have been limited only to a 1208 determination as it was the only question at issue  not attorney fees. For this reason, there was a subsequent judgment, *1224 wherein the attorney fee award was increased to $15,000  the judge clarified that he was not awarding attorney fees for matters raised in this case under a different docket number, but that were never consolidated with the present fraud claim, namely, the request for Triad to pay for a trial of acupuncture therapy. He did, however, emphasize that he believed the insurance company was uncaring and not compassionate with Mr. Freeman and that he was unimpressed with the video surveillance conducted by CNA. He then noted the novelty of the issue involved and the fact that this matter had been prepared for hearing several times. For these reasons, the WCJ increased the original attorney fee award of $5,000 to $15,000.

DISCUSSION
Triad and CNA assert the following two assignments of error on appeal (verbatim):
1. The hearing officer was clearly wrong, manifestly erroneous and erred in finding that the claimant did not commit a violation of La. R.S. 23:1208 by willfully making a false representation to secure benefits under the Worker's Compensation Act such that his rights to benefits should be forfeited.
2. The hearing officer was clearly wrong, manifestly erroneous and erred in finding that the defendant did not have a reasonable basis for the discontinuation of benefits and the award of attorney's fees associated therewith should be reversed.

Fraud  La.R.S. 23:1208
La. R.S. 23:1208 provides, in pertinent part:
1208. Misrepresentations concerning benefit payments; penalty
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
(4) Notwithstanding any provision of law to the contrary which defines "benefits claimed or payments obtained", for purposes of Subsection C of this Section, the definition of "benefits claimed or payments obtained" shall include the cost or value of indemnity benefits, and the cost or value of health care, medical case management, vocational rehabilitation, transportation expense, and the reasonable costs of investigation and litigation.
* * *
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
This statute authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. The statute applies to any false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. Flintroy v. Scott Cummins Salvage, 36,857 (La.App. 2d Cir.3/10/03), 839 So.2d 1231, writ denied, 03-1068 (La.6/6/03), 845 So.2d 1093, citing Resweber v. Haroil Construction Co., 94-2708 (La.9/5/95), 660 So.2d 7. All of these requirements must be present before a claimant can be penalized. Flintroy, supra; Nolan v. Rawls Farming Co., 35,086 (La.App. 2d Cir.10/31/01), 801 So.2d 524, writ denied, 02-0001 (La.3/15/02), 811 *1225 So.2d 910; Harris v. Bancroft Bag, Inc., 30,431 (La.App. 2d Cir.4/9/98), 714 So.2d 44. This statute is penal in nature; therefore, it must be strictly construed, both in its substantive ambit and in its penalty provisions. Flintroy, supra, citing Chevalier v. L.H. Bossier, Inc., 95-2075 (La.7/2/96), 676 So.2d 1072, and Smalley v. Integrity, Inc., 31,247 (La.App. 2d Cir.12/9/98), 722 So.2d 332, writ denied, 99-0072 (La.3/19/99), 739 So.2d 782.
Triad and CNA urge that Mr. Freeman's misrepresentations were material, willful and designed to secure benefits. According to Triad and CNA, Mr. Freeman told "bold-faced" lies in his deposition, to an evaluating physician and in open court. They assert that this type of claimant is exactly who the legislature intended to address with 23:1208. Triad and CNA further submit that there is no evidence that the medications taken by Mr. Freeman affected his ability to give a truthful statement.
In addition, Triad and CNA argue that it is incredible to credit Mr. Freeman's statement that he could not recall driving in light of what he could recall. Triad and CNA point out that Mr. Freeman's testimony was very specific  he could recall in detail every job he had held, including the names of his supervisors, all of his educational and family background, details related to other accidents he had sustained and all the details of the accident underlying this litigation, including witnesses and to whom it was reported. He also remembered each doctor he saw and the order in which he saw them, each of the three surgical dates, exact dates of hospitalization and who performed the surgeries. He had no trouble recalling that he had driven 100 yards to his father's house, but had no recollection of whether he had been driving to and from Shreveport. Triad and CNA further note that, after reviewing his deposition, the only change Mr. Freeman chose to make was made after he found out about the videotapes  after he knew he had been caught. Every other aspect of his deposition, according to him, was accurate. A further indication of Mr. Freeman's attempt to conceal his driving was the fact that he and his wife would drive a few blocks, stop and switch places.
On the other hand, Mr. Freeman relies on the manifest error standard of review and emphasizes that this was a credibility call on the part of the WCJ, stating that the ruling was "almost entirely a credibility call"; and, therefore, his ruling should not be disturbed on appeal. Mr. Freeman claims that he acknowledged at his deposition that the medications he was taking were affecting him and he denies that he knew of the videotapes when he made the corrections to his deposition to the effect that he could, in fact, remember driving back to Choudrant from Shreveport on two occasions. Mr. Freeman claims that his wife reminded him of the occasions where he had driven after the appointments and that is what prompted his corrections to the earlier deposition testimony. Mr. Freeman further states that this is consistent with his trial testimony.
Mr. Freeman admits that he made a misstatement. He denies, however, that the misstatement is material, pointing out that he had been through three back surgeries, numerous steroid injections, a trial of an implanted nerve stimulator, was taking excessive amounts of narcotic pain medications and had undergone acupuncture therapy in a last attempt to control excruciating pain in his back. He argues that the omission of two occasions of driving from Shreveport to Choudrant is not material when viewed in the context of this extended therapy plan. The WCJ agreed and opined that, while he was not a medical expert, it was clear that the narcotics *1226 were "terribly" affecting Mr. Freeman, even on the day of trial.
Finally, Mr. Freeman submits that his misstatements were not willful. Mr. Freeman admits that he testified in detail about other aspects of his life history, but he submits that there is no evidence of how accurate his testimony was or that anything was left out. In addition, the WCJ found it significant that Mr. Freeman corrected his misstatement promptly when he realized he had made it. Further, Mr. Freeman points out that these two occasions of driving were after acupuncture treatments, which alleviated some of his pain. In summary, Mr. Freeman argues that the WCJ was not manifestly erroneous in concluding that he did not have the intent to deceive or that he deliberately lied to receive benefits.
Determinations of misrepresentations for forfeiture of benefits under La. R.S. 23:1208 are governed by the manifest error/clearly wrong standard of review. Smith v. Roy O. Martin Lumber Co., 03-1441 (La.App. 3d Cir.4/14/04), 871 So.2d 661, writ denied, 04-1311 (La.9/24/04), 882 So.2d 1144. Under this standard, if the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart v. State Through Dept. of Transp. & Development, 617 So.2d 880 (La.1993). Stated another way, even though an appellate court may feel its own evaluation and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Williams v. Wal-Mart Stores, Inc., 00-1347 (La.App. 1st Cir.9/28/01), 809 So.2d 294, citing Stobart, supra.
When findings are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where the fact finder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Id.
In the case sub judice, we view the evidence in the record against the backdrop of Triad's and CNA's fairly consistent payment of benefits and medicals to Mr. Freeman over several years and during the majority of the course of his treatment for his work-related injury. After several surgeries and after Mr. Freeman had resorted to alternative therapies for pain management, i.e. acupuncture, Triad and CNA decided to investigate his level of actual disability by conducting surveillance of him traveling on two occasions to and from his acupuncture appointments. Mr. Freeman admitted that he misstated his driving practices and promptly corrected the inaccurate testimony in his deposition. He testified at trial that, at the time of the deposition, as well as at the trial, he was taking narcotic pain medications that affected his memory of his driving practices, but that, when his wife reminded him of the two occasions on which he drove, he took the appropriate action to remedy his misstatements. The WCJ observed this testimony, noting the obvious influence the narcotic medication was having on Mr. Freeman even on the day of trial. The *1227 WCJ found him to be credible and without any intent to deceive or willfully misrepresent his condition. Constrained by the standard of review in this case, we cannot find this credibility determination to be clearly wrong. In addition, we note that it is reasonable to conclude that Mr. Freeman would have no reason to deceive Triad and CNA regarding two occasions of driving when he was disabled and had been receiving legitimate benefits for legitimate medical treatment for his undisputed work-related injury.
Further, our review of the surveillance videotapes in this case creates some doubt as to the weight to be accorded the tapes as evidence of Mr. Freeman's ability, or disability. The WCJ stated that he found the tapes to be "uninformative, selective, and well near useless." We decline to adopt such an extreme position; however, we do note that there is some difficulty in determining the precise timing of the activities recorded on the tapes and, therefore, it is somewhat difficult to determine how long Mr. Freeman was driving. Further, Mr. Freeman's acts of bending, squatting or stooping could possibly be interpreted as checking the tire on the vehicle, which is consistent with his testimony that they were experiencing tire trouble on the occasions when he drove instead of his wife.
In summary, while this court may have reached a different conclusion had it been sitting as the trier of fact, we are constrained on appellate review by the manifest error standard. Finding some reasonable basis for the WCJ's conclusion in this case and finding no abuse of discretion in the WCJ's decision to credit Mr. Freeman's testimony regarding his misrepresentation, we must affirm the ruling reinstating his benefits.

Attorney fees
La. R.S. 23:1201.2, which historically provided for imposition of penalties and awards of attorney fees in cases such as this, was repealed by Act No. 1204 of the Regular Session of 2003, approved July 3, 2003, effective August 15, 2003. The new provisions, designated as La. R.S. 23:1201(I) and (J), have been substituted therefor. La. R.S. 23:1201(I) states as follows:
I. Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims. The provisions as set forth in R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions as set forth in R.S. 22:658(C) shall be applicable to claims arising under this Chapter.
Although the Workers' Compensation Act is liberally construed with regard to benefits, penal statutes are strictly construed. Williams v. Rush Masonry, 98-2271 (La.6/29/99), 737 So.2d 41. Arbitrary and capricious behavior consists of willful and unreasonable action, without consideration and regard for the facts and circumstances presented, or of seemingly unfounded motivation. Reed v. State Farm Mutual Auto. Ins. Co., 03-0107 (La.10/21/03), 857 So.2d 1012. Whether or not a refusal to pay is arbitrary, capricious or without probable cause depends primarily on the facts known to the employer or insurer at the time of its action. Reed, supra; Lynn v. Berg Mechanical, Inc., 582 So.2d 902 (La.App. 2d Cir.1991). The crucial *1228 inquiry is whether the employer has articulable and objective reasons for denying or discontinuing benefits at the time it took that action. Authement v. Wal-Mart, 02-2434 (La.App. 1st Cir.9/26/03), 857 So.2d 564.
Attorney fees should only be imposed when the facts clearly negate good faith and just cause in terminating benefits. See Harris, supra; Nunn v. CBC Services, Inc., 32,491 (La.App. 2d Cir.1/26/00), 750 So.2d 474. If there is conflicting evidence, an employer is not arbitrary or capricious in reaching its decision to deny or terminate benefits. See Sisco v. Liberty Mutual Ins. Co., 153 So.2d 216 (La.App. 2d Cir.), writs refused, 244 La. 899, 154 So.2d 768 and 244 La. 1012, 156 So.2d 223 (1963).
In the case sub judice, the WCJ based the award of attorney fees on his opinion that Triad and CNA advanced a "highly technical" interpretation of 23:1208 and were overzealous in their application of the same to the facts of this case. We disagree that Triad's and CNA's termination of benefits rises to the level of arbitrary and capricious action so as to warrant an award of attorney fees under 12:1201(I). As previously stated, the inquiry is focused on what knowledge the employer/insurer had at the time the benefits were terminated. Reed, supra; Lynn, supra. In this case, Triad and CNA were in possession of videotaped activities of Mr. Freeman showing him driving considerable distances and physically active. Mr. Freeman admits that he misrepresented his driving practices in his deposition and admitted that it was in fact him on the video tape driving. Further, he misrepresented to a treating physician that he was unable to drive farther than the 100-yard distance from his house to his father's house. Although the WCJ ultimately ruled that Mr. Freeman's misrepresentations were not made willfully or with intent to deceive, at the time benefits were terminated, we find that the knowledge of Triad and CNA that Mr. Freeman was engaged in physical activity that he represented he was unable to perform provided a reasonable basis for termination of benefits. While we find no manifest error in the WCJ's conclusion that the misrepresentations were not willful and, thus, did not trigger a forfeiture of benefits, we cannot say that Triad's and CNA's termination of benefits based on their knowledge at the time was arbitrary and capricious. For this reason, the award of attorney fees is reversed.

DECREE
For the foregoing reasons, the judgment of the workers' compensation judge reinstating benefits to Walter Freeman is affirmed. The award of attorney fees to Walter Freeman is reversed. Costs are to be borne equally by the parties.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Apparently, there was a shortage of workers' compensation hearing officers at this time. This disputed claim form was filed in September 2001, but the hearing was not held until March 2003.