960 So.2d 351 (2007)
William H. BAKER, Jr., Plaintiff-Appellee
v.
STANLEY EVANS LOGGING and American Interstate Insurance Company, Defendants-Appellants.
Nos. 42,156-WCA, 42,157-WCA, 42,158-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2007.
Rehearing Denied August 9, 2007.
*352 Law Offices of Michael S. Coyle, Ruston, by William A. Jones, Jr., for Appellants.
Darrell R. Avery, Jonesboro, for Appellee.
Before STEWART, CARAWAY and MOORE, JJ.
STEWART, J.
Stanley Evans Logging and American Interstate Insurance Company ("Evans Logging") appeals the WCJ's award of workers' compensation benefits to William Baker. Because we find that the WCJ erred in finding that Mr. Baker did not commit fraud under La. R.S. 23:1208, we *353 reverse and render judgment as outlined herein.

FACTS
This workers' compensation matter is a consolidated proceeding of three disputed claims, two filed by the employer/insurer, Evans Logging and the other filed by the employee, William Baker. The single issue presented by this appeal centers around whether Baker committed fraud by allegedly failing to disclose post-injury jobs, employers, earnings, and other misrepresentations.
Baker was employed by Evans Logging as a logging subcontractor when he cut his foot with a chain saw on December 4, 2001. American Interstate is the workers' compensation insurer for Evans Logging. Baker got stitches in his foot and was released to return to work after missing a few days. Baker continued to work for Evans Logging until March 2002, when Evans Logging sold its equipment and Baker's employment ended. Following his dismissal, Baker requested workers' compensation benefits for the December 2001 injury. American Interstate accepted the claim and began paying benefits of $186.24 a week.
On August 16, 2002, Baker's treating physician, Dr. Richard Ballard, performed a Functional Capacity Evaluation (FCE) on Baker and concluded that he was able to work at the Medium-Heavy Physical Demand Level for an eight-hour day. Baker contended that his indemnity rate was too low and retained counsel to pursue his claim. American Interstate asked for earnings records to substantiate the request for higher benefits, but none were supplied. However, after a meeting with American Interstate, Baker's benefits were increased to the statutory maximum of $398.00 per week, and American Interstate issued a check for $4,629.65 in retroactive benefits, based on the higher average weekly wage.
Next, American Interstate attempted to conduct vocational rehabilitation with Baker, but he refused to participate. After determining that Baker could earn at least $1,440.00 per month in spite of his injury, American Interstate placed Baker on Supplemental Earnings Benefits (SEB) at a rate of $1,256.00 per month. Baker then filed a Disputed Claim for Benefits on March 12, 2004.
Baker eventually supplied American Interstate with his tax returns in an effort to establish that he qualified for higher indemnity benefits. Included in that package of information was a payment voucher reflecting that Baker had to pay an extra $2,145.00 in federal taxes on his 2001 return. Baker also sent monthly earnings reports to American Interstate. These reports, known as "1020 forms," were all signed by Baker who attested to their veracity.
During the course of discovery, Baker was questioned concerning his income. American Interstate contended that Baker had given them many false statements, including the fact that he had not paid the IRS $2,145.00 in 2001 as he had claimed. Apparently Baker did not actually file any tax returns for the years of 2001 and 2002 until August 5, 2004. American Interstate also learned that Baker had been employed by persons other than those he revealed to them. After gathering this information, American Interstate filed a Disputed Claim alleging that Baker was capable of earning 90% of his pre-injury wage and that he had committed fraud entitling them to reimbursement for any amounts previously paid to Baker.
Trial was held October 3, 2005, and following trial the WCJ ruled that American Interstate had not proved that Baker had *354 committed fraud, nor had they proved that he was capable of earning 90% of his pre-injury wage. This appeal ensued.

DISCUSSION
Standard of Review
The trial court's assessment of Baker's knowledge is a factual finding. Absent an abuse of discretion or manifest error, a reviewing court cannot disturb the factual findings of a trial court. Rosell v. ESCO, 549 So.2d 840 (La.1989). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell, supra; Charrier v. Primm, 40,038 (La.App.2d Cir.08/19/05), 909 So.2d 1033.
Fraudulent Statements Under La. R.S. 23:1208
Evans Logging argues that the WCJ erroneously determined that Baker did not make false statements which would justify the forfeiture of benefits and deny him additional SEBs. In pertinent part, La. R.S. 23:1208 provides:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * *
D. In addition to the criminal penalties provided for in Subsection C of this Section, any person violating the provisions of this Section may be assessed civil penalties by the workers' compensation judge of not less than five hundred dollars nor more than five thousand dollars, and may be ordered to make restitution. Restitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct.
E. Any employee violating this Section shall, upon determination by the workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
This statute authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. The statute applies to any false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. All of these requirements must be present before a claimant can be penalized. Freeman v. Triad Builders, 39,657 (La.App.2d Cir.5/11/05), 902 So.2d 1220, writ denied, 05-1562 (La.12/16/05), 917 So.2d 1118. Because statutory forfeiture of workers' compensation benefits for willfully making a false statement for the purpose of obtaining benefits is a harsh remedy, it must be strictly construed. Risk Management Services v. Ashley, 38,431 (La.App.2d Cir.5/14/04), 873 So.2d 942, writ denied, 04-1481 (La.9/24/04), 882 So.2d 1138. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. An inadvertent and inconsequential false statement will not result in the forfeiture of benefits. Jim Walter Homes, Inc. v. Prine, 01-0116 (La.App. 1st Cir.2/15/02), 808 So.2d 818; Rosson v. Rust Constructors, Inc., 32,789 (La.App.2d Cir.3/1/00), 754 So.2d 324, writ denied, 00-0914 (La.5/26/00), 762 So.2d 1105.
Appellate review of determinations of misrepresentations for forfeiture *355 of benefits under La. R.S. 23:1208 is governed by the manifest error/clearly wrong standard of review. Freeman v. Triad Builders, supra. Under this standard, if the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart v. State through Dept. of Transp. & Development, 617 So.2d 880 (La.1993).
Appellants contend that Baker intentionally misled them concerning the sources and amount of his income from secondary jobs in the filling out of the 1020 forms. We have previously held that failure to disclose a second job or hiding income from post-injury employers while drawing workers' compensation benefits can violate 1208. Franklin v. Health-South, 41,458 (La.App.2d Cir.9/20/06), 940 So.2d 83, citing Tuminello v. Girling Health Care Inc., 98-977 (La.App. 5 Cir. 1/26/99), 731 So.2d 316. Evans Logging contends that Baker failed to disclose at least $50,000.00 in post-injury income. Baker asserts that there are no records prior to 2004, and review of his income statements reveals that he actually under reported his expenses which resulted in a monthly average of $377.59 in unreported income over a 42-month period. Although the record does not allow us to make a specific finding as to the exact amount of income that was unreported, we do not find Mr. Baker's arguments persuasive. The 1020 forms provide the unequivocal directive to report all gross earnings on the form. We find that Baker's failure to disclose at least twelve post-injury jobs is not inadvertent and constitutes fraud.
We are unpersuaded by Baker's claim that he thought he was only supposed to report "net" income instead of "gross" income. The WCJ lost sight of the fact that Baker failed to report any outside income from his employers on his 1020 forms. Baker stated in his answers to interrogatories that all the earnings on his 1020 forms came from garden produce and fishing worms, and even if he is taken at his word, it is evident that he failed to disclose considerable earnings from his outside employers. This court is not unmindful of the fact that Mr. Baker is indeed a sophisticated worker who is a high school graduate with five years of college at LSU. Moreover, Mr. Baker is also a relatively astute businessman having been involved in significant timber and land transactions throughout his career.
Moreover, misrepresenting pre-injury earnings in order to receive more in indemnity benefits is 1208 fraud. Darby v. Richard, XXXX-XXXX (La.App. 3d Cir.02/05/03), 838 So.2d 141. The parties dispute this intent of Mr. Baker's actions concerning the reporting of his tax returns and demonstration of his pre-injury income. Evans Logging requested Baker's tax returns for 2001-2002. Baker turned over the returns for 2001 and 2002 and included a voucher indicating he owed the IRS $2,145.00. However, he did not file the returns until 2004. Baker failed to disclose the status of those returns when Evans Logging sought information concerning his pre-injury income. While not necessarily fraudulent, those actions to give indicia of a penchant for concealing information on the part of Baker that undermine his credibility. We find that Baker's delivering federal and state tax returns, with payment vouchers, when those returns had not actually been filed, is an attempt to mislead his employer with respect to his income for the purpose of obtaining benefits.
Consequently, the WCJ erred by awarding him SEB and finding that Baker had not committed 1208 fraud. However, *356 we are unable to determine from the record an exact date for the start of misrepresentations. Since the award of restitution under the statute is permissive rather than mandatory, we decline to do so. Nonetheless, we order Mr. Baker to pay penalties of $1,500.00 and to pay all trial and appellate costs.

CONCLUSION
Based on the above and foregoing, we reverse the WCJ's finding of no fraud by Mr. Baker and reverse the WCJ's award of benefits to Baker. We also order Mr. Baker to pay penalties of $1,500.00 and to pay all trial and appellate costs.
REVERSED AND RENDERED.
APPLICATION FOR REHEARING
Before STEWART, CARAWAY, PEATROSS, DREW and MOORE, JJ.
Rehearing denied.