WILLIAMS, J.
 

 | defendants, James Gentry Trucking Company, Inc., and its insurer, Louisiana Workers’ Compensation Corporation (“LWCC”), appeal a workers’ compensation judge’s ruling denying their claim for the forfeiture of claimant’s benefits. For the following reasons, we affirm.
 

 
 *1171
 
 FACTS
 

 Claimant, Leeland Hurt, was employed by defendant, James Gentry Trucking Company, Inc. (“Gentry Trucking”), as a truck driver. On July 18, 2004, claimant suffered a work-related back injury. Claimant filed a disputed claim for workers’ compensation and received medical treatment and temporary total disability (“TTD”) benefits.
 

 On April 9, 2007, defendants filed a re-conventional demand, alleging that claimant “was employed and earned wages while being paid [TTD] benefits.” Defendants also alleged that claimant “made false statements or misrepresentations for the purpose of obtaining” workers’ compensation benefits, in violation of LSA-R.S. 23:1208.
 

 A hearing was held on October 1, 2008. Claimant testified and admitted that he worked for James Franks and had earned four paychecks while receiving TTD benefits.
 
 [1]
 
 Claimant also testified that he stopped working for Franks because his “back was in too bad a shape,” and he was unable to perform his duties. Claimant stated that he informed LWCC that he had taken a job “but it wasn’t going to pan out.” Thereafter, his workers’ compensation benefits were terminated.
 

 Annette Robinson, a LWCC claims representative, testified that ^claimant called her on February 1, 2005, and notified her that he had attempted to return to work and “was trying it to see how it would work out for him.” Robinson stated that claimant told her that the job did not work out because he was unable to handle the duties. Robinson testified that she informed claimant that he was “not entitled to receive workers’ comp benefits and work and receive wages at the same time,” and that “he was probably overpaid.” Robinson also testified that she sent claimant a supplemental earnings benefits (“SEB”) form, which he completed and returned. She stated that she decided to terminate claimant’s indemnity benefits at that time “because we need[ed] to find out if he was overpaid, get his wages, get the SEB form back.” Robinson also stated that she contacted James Franks, who verified that claimant had worked for him. Robinson further testified that LWCC continued to pay claimant workers’ compensation benefits until July 15, 2005. Thereafter, the decision was made to seek forfeiture of claimant’s benefits. During cross-examination, Robinson admitted that she could not “say definitively” that she informed claimant, prior to February 1, 2005, that he was required to advise LWCC if he returned to work.
 

 LWCC also introduced into evidence the deposition of James Franks, the owner of Franks Welding & Construction, Inc. Franks testified that claimant approached him during the summer of 2004 and asked if he needed a truck driver. Franks stated that he did not hire claimant at that time, but he told claimant that he would call him if he needed him to make a delivery. Franks testified that he called claimant in January or February of 2005, and |3claimant made “three or four runs” for him. Although Franks testified that claimant never informed him that his back had been injured and he was receiving workers’ compensation benefits, Franks testified that he accompanied claimant on the “runs” to secure the loads; claimant only drove the truck.
 
 [2]
 
 Franks also testi
 
 *1172
 
 fied that after claimant received his second paycheck, claimant accused him of failing to pay him for a “run” to Oklahoma City. At that point, an argument ensued and claimant requested that Franks either pay him in cash or make his paychecks payable to someone else. Franks testified that claimant told him that paychecks made payable to him “would mess his disability up or something.”
 
 [3]
 

 Following a hearing, the workers’ compensation judge (“WCJ”) found that claimant was entitled to all applicable workers’ compensation benefits and denied defendants’ claim for forfeiture. The WCJ stated:
 

 The Court finds that while claimant’s actions are inconsistent and might rise to the level of negatively impacting his credibility, those actions did not amount to an intentional or fraudulent representation necessitating a forfeiture under 23:1208. Significant to the Court was the fact that [claimant] admitted and seemingly offered the fact that he had been trying to go back to work. This activity negates the ability of the defendant to meet its burden under 23:1208, and as such claimant is entitled to all applicable benefits under the Louisiana Workers’ Compensation Act pending further orders of this Court.
 

 Defendants appeal.
 

 | .DISCUSSION
 

 Defendants contend the WCJ was manifestly erroneous in finding that claimant was entitled to workers’ compensation benefits and in denying the claim for forfeiture of benefits. Defendants argue that the evidence shows that claimant worked for Franks for approximately four weeks, and did not inform LWCC that he had worked until after Franks refused to pay him in cash.
 

 LSA-R.S. 23:1208 provides, in pertinent part:
 

 A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
 

 ⅜ * *
 

 E. Any employee violating this Section shall, upon determination by workers’ compensation judge, forfeit any right to compensation benefits under this Chapter.
 

 [[Image here]]
 

 G. Whenever an employee receives benefits pursuant to this Chapter for more than thirty days, the employee shall upon reasonable request report his other earnings to his employer’s insurer on a form prescribed by the director and signed by the employee.
 

 H. (1) Whenever an employee fails to report to his employer’s insurer as required by this Section within fourteen days of his receipt of the appropriate form, the employee’s right to benefits as provided in this Chapter may be suspended .
 

 ⅜ * *
 

 The only requirements for forfeiture of benefits under Section 1208 are (1) a false statement or representation, (2) willfully made, and (3) made for the purpose of obtaining or defeating any benefit or payment.
 
 Resweber v. Haroil Const. Co.,
 
 94-2708 (La.9/5/95), 660 So.2d 7;
 
 Freeman v. Chase,
 
 42,716 (La.App.2d Cir.12/5/07), 974
 
 *1173
 
 So.2d 25. Section 1208 applies to |sany false statement or misrepresentation made willfully by a claimant for the purpose of obtaining benefits. All of these requirements must be present before a claimant can be penalized.
 
 Baker v. Stanley Evans Logging,
 
 42,156 (La.App.2d Cir.6/20/07), 960 So.2d 351;
 
 Freeman v. Triad Builders,
 
 39,657 (La.App.2d Cir.5/11/05), 902 So.2d 1220,
 
 writ denied,
 
 2005-1562 (La.12/16/05), 917 So.2d 1118.
 

 Forfeiture is a harsh remedy and must be strictly construed.
 
 Wise v. J.E. Merit Constructors, Inc.,
 
 1997-0684 (La.1/21/98), 707 So.2d 1214;
 
 Freeman v. Chase, supra.
 
 The WCJ’s finding or denial of forfeiture will not be disturbed on appeal absent manifest error.
 
 Freeman v. Chase, supra; Johnikin v. Jong’s Inc.,
 
 40,-116 (La.App.2d Cir.9/21/05), 911 So.2d 413,
 
 writ denied,
 
 2005-2251 (La.2/17/06), 924 So.2d 1020.
 

 In
 
 Baker v. Stanley Evans Logging,
 
 42,-156 (La.App.2d Cir.6/20/07), 960 So.2d 351, the claimant filed a claim for workers’ compensation benefits. During the course of the investigation of the claim, the employer/insurer learned,
 
 inter alia,
 
 that the claimant had made false statements with regard to the sources and amount of income from secondary jobs when he completed his monthly earnings reports for SEB. The WCJ found that the claimant did not commit fraud under Section 1208. This court reversed, stating:
 

 The 1020 forms provide the unequivocal directive to report all gross earnings on the form. We find that Baker’s failure to disclose at least twelve post-injury jobs is not inadvertent and constitutes fraud.
 

 [[Image here]]
 

 The WCJ lost sight of the fact that Baker failed to report any outside income from his employers on his 1020 forms. Baker stated in his answers to interrogatories that | fiall the earnings on his 1020 forms came from garden produce and fishing worms, and even if he is taken at his word, it is evidence that he failed to disclose considerable earnings from his outside employers.
 

 Id.
 
 at 355.
 

 In
 
 Franklin v. HealthSouth,
 
 41,458 (La.App.2d Cir.9/20/06), 940 So.2d 83, the claimant alleged that she was injured during the course and scope of her employment on March 25, 2004, but did not report it to her employer. In April of 2004, HealthSouth offered the claimant a “light-duty” position, which she declined, stating that she had a doctor’s excuse and could not work. Claimant reiterated to ESIS, HealthSouth’s third-party administrator, that she could not work and expressly denied having “a second job of any kind.” HealthSouth began paying weekly indemnity payments. On May 11, 2004, Health-South learned that the claimant was operating a new restaurant, which closed after three weeks of business.
 
 [4]
 
 The claimant filed a disputed claim for workers’ compensation benefits in July 2004, demanding TTD benefits for March 26-April 6, 2004 and April 20-30, 2004. She also requested SEB for May 1, 2004-March 1, 2005. HealthSouth responded, contending the claimant did not suffer a work-related injury and that she had forfeited her right to all benefits by making false representations to obtain worker’s compensation benefits. The WCJ found that the claimant had forfeited her right to benefits and had “deliberately lied” about the extent of her disability. This court affirmed, |7stating:
 

 
 *1174
 
 [HealthSouth] proved that [the claimant] made certain statements to [Health-South and ESIS] and then offered the surveillance videotape to refute those statements.... [The videotape] shows [the claimant] performing mild to moderate activity shortly after she told [HealthSouth] that she had a doctor’s excuse and simply could not work. More importantly, it shows her working at [the restaurant] only days after telling [ESIS] that she had no second job whatsoever. This was a direct contradiction. The failure to disclose a second job will support a finding of forfeiture under § 1208.
 
 Tuminello v. Girling Health Care Inc.,
 
 98-977 (La.App. 5th Cir.1/26/99), 731 So.2d 316. The record supports the WCJ’s finding that [the claimant] made false statements to [Healthsouth] and [ESIS],
 

 Id.
 
 at 88.
 

 In
 
 Tuminello, supra,
 
 the claimant was injured while working for Girling Health Care, Inc. (“Girling”). The claimant received workers’ compensation benefits from September 16, 1996 through December 12, 1996. Thereafter, “an anonymous source” informed Girling that at the time the claimant was injured, she was also a part-time employee of Interim Health Care (“Interim”). Girling later learned that the claimant continued to work for Interim during the time that she was receiving workers’ compensation benefits. On March 17, 1997, at Ghiing’s request, the claimant signed a form stating that she was employed exclusively by Girling. Gir-ling terminated the claimant’s employment and sought forfeiture of her workers’ compensation benefits. The OWC found that the claimant had forfeited her right to workers’ compensation benefits. The appellate court affirmed, stating:
 

 [Claimant actively made a false statement enabling her to collect more benefits than were legal under the statute. IsWhile she later recanted the written statement that she was employed exclusively by Girling, that admission came only after she was confronted with the truth.
 

 Claimant herein intentionally deceived her employer, and willfully made a false statement regarding additional income which resulted in a distribution of temporary total disability benefits and an overpayment of $551.00. The false statement, made knowingly, defrauded the workers’ compensation system.
 

 Id.
 
 at 318.
 

 The instant case is distinguishable from
 
 Baker, Franklin
 
 and
 
 Tuminello.
 
 In
 
 Baker, supra,
 
 the claimant actively made false statements with regard to the sources and amount of income from secondary jobs on his 1020 forms. In
 
 Franklin, supra,
 
 the claimant told the insurer’s claims adjuster that she was unable to work and, when asked, stated that she did not have “a second job of any kind.” In
 
 Tuminello, supra,
 
 the claimant failed to inform her employer that she had a second job at the time of her injury and signed a form stating that she did not have a second job.
 

 In the instant case, there was no allegation that claimant actively made a false statement or representation or that he failed to report income on a 1020 form. Rather, Gentry Trucking and LWCC argue that claimant violated Section 1208 because he accepted a job while receiving benefits after he signed a certification of compliance, which notified him that he could not work and receive benefits. The form was introduced into evidence and stated:
 

 * * *
 

 It is unlawful for you to work and receive workers’ compensation disability benefits, except for supplemental earnings benefits....
 
 As an in
 
 
 *1175
 

 jured worker, you must notify your employer or insurer of the Reaming of any ivages, changes in employment or medical status, receipt of unemployment benefits, receipt of social security benefits and receipt of retirement benefits.
 
 If you receive benefits for more than 30 days, you will be required to certify your earnings to your insurer quarterly.
 

 [[Image here]]
 

 (Emphasis in original).
 

 There is no evidence that claimant made a false statement with regards to the certification of compliance. As noted above, claimant notified LWCC he had worked for approximately four weeks. Ms. Robinson sent claimant a SEB 1020 form, which claimant completed and returned, accurately reporting his income. We find that under the facts of this case, claimant’s act of earning wages after signing the certification of compliance notifying him of the penalties of working while receiving workers’ compensation benefits did not constitute fraud.
 

 In
 
 Smalley v. Integrity, Inc.,
 
 31,247 (La.App.2d Cir. 12/9/98), 722 So.2d 332,
 
 writ denied,
 
 99-0072 (La.3/19/99), 739 So.2d 782, the claimant was injured on the job and received TTD benefits and medical treatment. At some point, the claimant accepted part-time employment but did not report his income to his employer, the employer’s workers’ compensation insurer or his physicians. His employer learned of his employment and terminated his TTD benefits. The claimant filed a disputed claim for compensation and the employer defended, alleging fraud under Section 1208. This court affirmed the WCJ’s ruling that the claimant had not forfeited his right to benefits, stating:
 

 We adhere to the view that penal statutes must be strictly construed.... [A]ct 368 of 1995 ... added to [Section 1208] subsections F, G and H, which created a | ^requirement to notify the claimant of the fines and penalties for fraud, and a duty for the claimant to report “other earnings” to his employer’s comp carrier, on penalty of suspension of benefits. The apparent purpose of the amendment was to create an intermediate remedy for conduct — failure to report wages — that the legislature considered wrong but not serious enough to justify
 
 forfeiture
 
 of all benefits. We therefore find that Smalley’s conduct, accepting comp checks without reporting his part-time work, does not fall within the ambit of the forfeiture provision of § 1208 E, but is more appropriately addressed by the suspension provision of § H.
 

 Id.
 
 at 336 (emphasis in original).
 

 In
 
 Figueroa v. Hardtner,
 
 35,678 (La.App.2d Cir.1/25/02), 805 So.2d 1267, the claimant was injured while working as a registered nurse. Her physicians informed her that she could no longer work, and she began receiving TTD benefits. Three months later, the claimant accepted a job working as a teacher. The employer filed to terminate workers’ compensation benefits, arguing that the claimant had violated Section 1208 by working while receiving indemnity benefits. The WCJ granted the claimant’s motion for directed verdict and dismissed the employer’s demand for forfeiture of benefits, and this court affirmed that aspect of the WCJ’s ruling. Citing
 
 Smalley, supra,
 
 this court stated:
 

 When a claimant does not receive the forms for reporting earnings, the employee should not be found guilty of La. R.S. 23:1208 fraud when working and receiving indemnity and medical benefits, since the employer never inquired about the employee’s earnings while paying benefits. Until proper notice and forms are provided to the claimant,
 
 *1176
 
 appellate courts have been reluctant to declare a claimant’s failure to report income as fraudulent behavior.
 

 Id.
 
 at 1273 (internal citations omitted). See also,
 
 Louisiana Workers’ Compensation Corp. v. Gray,
 
 34,731 (La.App.2d Cir.5/9/01), 786 So.2d 310.
 

 In the instant case, neither LWCC nor Gentry Trucking inquired about claimant’s earnings during the time he was receiving TTD benefits. In fact, claimant did not receive any forms for reporting earnings prior to informing LWCC that he had worked during the month of January 2004. We recognize that claimant did not inform LWCC that he had accepted a job until after he decided he could not perform the duties of that job. Nevertheless, claimant did report that he had earned wages and accurately reported the amount of wages earned prior to any inquiry by the LWCC.
 

 Additionally, LWCC does not point to any specific statement or representation made by claimant. Rather, LWCC contends “claimant’s actions, of attempting to work for cash so that he could conceal the employment and the concealed cash wages would not affect his worker’s compensation, clearly rose to the level of a violation of [Section 1208].”
 

 As stated above, Franks testified that claimant asked him if he could either be paid in cash or that his paycheck be made payable to someone else to avoid “mess[ing] his disability up.” Conversely, claimant testified that he never made that request. Although the WCJ characterized claimant’s action’s as “inconsistent,” the WCJ ultimately concluded that claimant’s purported statements “did not amount to an intentional or fraudulent representation necessitating a forfeiture under 23:1208.”
 

 We agree. Even if the defendants’ allegation that claimant sought to be paid in cash to avoid “messing up his disability” is true, we find that |12claimant’s conduct, with regard to statements made to Franks, did not rise to the level of fraud under Section 1208. The purported request, while reprehensible, did not constitute a “false statement or representation.” As stated above, claimant notified the claims representative that he had attempted to return to work during the same time period that defendants assert he began working. Moreover, the claims representative could not say definitively that she had informed claimant, prior to his telephone call to her, that he was to advise LWCC if he returned to work. There is no evidence in this record that claimant actually received any cash payments or checks made payable to someone else. Accordingly, we find that the WCJ was not manifestly erroneous in finding that claimant was entitled to workers’ compensation benefits and in denying LWCC’s claim for forfeiture of benefits.
 

 CONCLUSION
 

 For the reasons set forth herein, we affirm the ruling of the WCJ. Costs of this appeal are assessed to defendants, James Gentry Trucking Company, Inc. and Louisiana Workers’ Compensation Corporation.
 

 AFFIRMED.
 

 [1]
 

 . According to Franks’ testimony, claimant made “runs” on an “as needed” basis.
 

 [2]
 

 . Conversely, claimant testified that he told Franks that he had a “problem in the lower lumbar section,” and Franks accompanied him "on every trip in case I couldn’t handle the job.”
 

 [4]
 

 . A surveillance video, taken on May 14 and May 19, 2004, showed the claimant carrying pots from her house to her car and into the restaurant. The video also depicted the claimant performing various duties in the restaurant and lifting her grandson.